WHITLOCK *v.* STATE.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

O. L. McMahan, of Morristown, and Crawford & Hurd, of Newport, for plaintiff in error.

J. Malcolm Shull, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Plaintiff in error was convicted of involuntary manslaughter, with punishment fixed at confinement in the penitentiary from one year to one year and a day, for causing the death of Scott Jenkins who was hit in the face by the plaintiff in error with his fist, causing Jenkins to fall backwards and strike his head on the pavement.

Through assignments of error it is insisted: (1 and 2) That the evidence preponderates against the verdict: (3) the trial court erred in failing to fully charge the law

with respect to involuntary manslaughter; (4) the evidence shows that the plaintiff in error struck in self-defense; and (5) the punishment is harsh and excessive.

While at a beer hall the plaintiff in error and the deceased, who was slightly intoxicated, engaged in a discussion as to the relative abilities of fishermen. This discussion continued after they walked out of the beer hall. In the heat of this discussion the deceased called the plaintiff in error a vile name and after the plaintiff in error had started on to get in his car the deceased followed him and repeated the vile accusation plus an added invective when the plaintiff in error (to use his words) "just came off like that and give more of a shove and he staggered backwards and fell," He says this lick or shove hit the deceased "along in the mouth, or nose, somewhere in the face."

After thus striking the deceased the plaintiff in error got in his automobile and left. Shortly thereafter the deceased was found lying in the road, apparently where he had fallen when knocked down by the plaintiff in error, unconscious. Revival was attempted but proved unsuccessful. He was taken to a doctor who thought him drunk and ordered him put in bed. On the following day he had not "come to" and upon a further and more thorough examination it was found he was suffering from brain concussion from which he died the afternoon following the time he was struck and fell.

When the plaintiff in error was informed later that night that the deceased was "lying out there and hadn't spoke a word since he left," the plaintiff in error replied "he called me a S. O. B. and I hit him."

On the trial the plaintiff in error says that at the time he hit the deceased the latter had his hand in his

pocket, was advancing, and called him a vile name. On cross examination he was asked why he had not told the Sheriff and others these things, to which he replied that he "kept it to myself."

It has often been stated by this Court that " 'provocative words' will not justify even a simple assault." *Mullendore* v. *State,* 183 Tenn. 53, 59, 191 S. W. (2d) 149, 151.

It is very vigorously argued in the brief that the charge given the jury defining involuntary manslaughter did not go further and tell the jury "that it must further appear that it was not the result of misadventure or of an independent intervening cause in which the accused did not participate and could not have foreseen to result from his unlawful act." In pressing this argument counsel relies on *Copeland* v. *State,* 154 Tenn 7, 285 S. W. 565, 49 A. L. R. 605, the *Copeland Case* involved the death of a small boy who ran from behind a wagon into the path of Copeland's automobile. The distinction between the instant case and the *Copeland Case* is that in the instant case the act complained of (that was committed by the plaintiff in error) was an Act *malum in se* while in the *Copeland Case* the act complained of was an act *malum prohibitum.* This distinction is clearly pointed out in *Holder* v. *State,* 152 Tenn. 390-393, 277 S. W. 900 and in *Keller* v. *State,* 155 Tenn. 633, 636, 299 S. W. 803, 59 A. L. R. 685, and need not here be repeated. Suffice it to say that if the act which causes death is *malum in se,* the criminal intent is supplied, and it is not necessary that it be shown that death was the natural and probable result of the act. *Taylor* v. *State,* 157 Tenn 421, 427, 7 S. W. (2d) 50.

From an examination of the charge as given it seems perfectly correct and is almost a verbatum copy of

the law as stated by this Court in *Wade* v. *State,* 174 Tenn. 248, 250, 124 S. W. (2d) 710.

■ Assault and battery is a common law offense, punishment for which is not specifically provided by our statutes. *Hagood* v. *State,* 183 Tenn. 49, 51, 190 S. W. (2d) 1023.

■ *Malum in se* is defined as: "An act involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law." 38 C. J., P. 520. See also 54 C. J. S., page 909.

■ *Malum prohibitum* is:

"An act made wrong by legislation; a forbidden evil." 38 C. J., P. 520. See also, 54 C. J. S., page 909. Obviously, therefore, the assault and battery committed by the plaintiff in error upon the deceased was *Malum in se.*

■ It seems rather clear to us that the element of self-defense relied upon was largely an afterthought. Reading his testimony convinces us that the assault and battery was due to the name or names he was called by the deceased. Be this as it may the jury has so concluded and we certainly cannot say the evidence preponderates against this finding. The plaintiff in error wholly fails to show a reasonable ground for apprehension of death or great bodily harm at the hands of the deceased. See *Rippy* v. *State,* 39 Tenn 217, 219.

■ The punishment as fixed by the jury is the statutory minimum for involuntary manslaughter. Code, Sec. 10754. We, therefore, can see no reasonable ground upon which it can be said to be harsh and unreasonable under this record.

For reasons given the judgment below must be affirmed. All concur.