**Wayne K. FARR, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 21, 1979.

Permission to Appeal Denied by Supreme Court Dec. 31, 1979.

Frank V. Williams, III, Rockwood, for appellant.

William M. Leech, Jr., Atty. Gen., James A. DeLanis, Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Kingston, Edward P. Bailey, Jr., Asst. Dist. Atty., Lenoir City, Charles Hawk, Asst. Dist. Atty., Kingston, for appellee.

## OPINION

TATUM, Judge.

The defendant, Wayne K. Farr, was sentenced to serve ten years in the penitentiary for second-degree murder. This prosecution arose from the death of Mr. P. G. Shrout as a result of being struck by a truck operated by the defendant. On this appeal, the defendant insists that the evidence does not support his conviction of second-degree murder. He also insists that the trial judge erred in restricting his argument to the jury. After considering the issues, we affirm the conviction.

The facts established that at about 1:30 o'clock P.M., on 26 July 1978, the defendant was operating his truck across the "Old Bridge" in the city of Harriman at a speed of 25 to 30 miles per hour. There is another road forming a junction at the end of the bridge and it is necessary to make a 90 degree turn at the end of the bridge. When the defendant attempted to make a turn to the right at a speed of 25 to 30 miles per hour, his left door flew open and he fell from the truck. Before Leonard Gallaher, the passenger in his truck, could grab the steering wheel, the truck continued to the right and struck Mr. Shrout, who was sitting in a yard, killing him.

Officer Paul C. Carnahan investigated the accident and talked with the defendant at the scene. Officer Carnahan testified that he "could smell alcohol on him [the defendant], and also he did not stand on his own free will, and his speech was slurred." The officer then arrested the defendant for driving while intoxicated and reckless driving.

The defendant's ex-wife, Reba Farr, testified that the defendant and Gallaher came to her residence shortly after noon to catch chickens to give to Gallaher's mother. At that time, according to Reba Farr, the defendant was "drinking heavily." She was

present·at the pen where the defendant was catching chickens and observed him "staggering around over the lot and cursing, and everything." She smelled the odor of alcohol on his breath. When she asked him if he had been drinking, he first denied it, but after an argument about the matter, he admitted to her that he had consumed "a few beers."

The defendant, testifying in his own behalf, admitted that he had split a six-pack of "tall boys" with a co-worker between about 9:30 and 10:30 that morning, but stated that he had drunk nothing since. He and other witnesses denied that he was intoxicated at the time he fell out of his truck. He stated that the argument with his ex-wife grew out of her request that he deliver the chickens in the automobile rather than in the truck.

There is no conflict in the following evidence: The defendant's truck was a 1964 Chevrolet in very poor condition. The door latches on both doors would not function and the defendant had placed slide latches, ordinarily used for screen doors, on the truck. The latches operated with a sliding bolt, were rusty and dilapidated, and would frequently vibrate loose when the truck was running. The latch had vibrated loose and the driver's door had opened previously while the defendant was driving the truck; also, he was aware that this had occurred while other persons were driving the truck.

The defendant further testified that the bridge was narrow and that at the end of it there was a "short, steep curve and you can't go around it very fast." He testified that he knew the dangerous condition of the door when he leaned against it in making the right turn. When he leaned against the door in the turn, it opened and he fell out of the truck.

■ Malice, either express or implied, is an essential element of the crime of second-degree murder. T.C.A. § 39–2401– 39–2403. The requisite element of malice may be, and in most vehicular homicide cases, must be, implied from the surrounding circumstances. *State v. Johnson*, 541 S.W.2d 417, 418 (Tenn.1976). The criminal

intent necessary to sustain a conviction of murder in the second degree is supplied from an unlawful act which is malum in se. *Griffin v. State*, 578 S.W.2d 654, 656 (Tenn. Cr.App.1978). Driving an automobile while under the influence of an intoxicant is malum in se. *Griffin v. State, supra.* The driving of a motor vehicle in wilful or wanton disregard for safety of persons or property (T.C.A. § 59–858) is also malum in se. T.C.A. § 59–858(a); *State v. Johnson, supra.*

■ We find sufficient evidence upon which a rational trier of fact could be convinced beyond a reasonable doubt that the defendant was driving while intoxicated. We also find that a rational jury might be convinced beyond a reasonable doubt that aside from the defendant's intoxication, his conduct in operating the truck in the manner and under the circumstances described above, could constitute implied malice. This latter conduct implied such a high degree of conscious and wilful recklessness as to amount to that malignity of heart constituting malice. Though unintentional, the killing was murder. *Tarvers v. State*, 90 Tenn. 485, 16 S.W. 1041, 1044 (1891); *Owen v. State*, 188 Tenn. 459, 221 S.W.2d 515, 519 (1949). We must overrule the first assignment of error. Rule 13(e), Tennessee Rules of Appellate Procedure; *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The defendant says that the trial judge erred in sustaining the State's objection to his argument distinguishing the legal standards of civil liability from the standards of criminal liability in motor vehicle cases. The context of the record upon which this assignment is based, is as follows:

[MR. WILLIAMS] . . . Ladies and gentlemen the Assistant Attorney General has made a lot of the fact that Mr. Shrout is dead. And, yes he is. And this man may well end up being at least civilly liable for the man's injuries, but . . . .

MR. BAILEY: Your Honor, the State objects to argument And (sic) submits to

the Court that that is improper. That any civil liability has nothing to do with what goes on in this Court.

MR. WILLIAMS: We are talking about a different standard here . . .

MR. BAILEY: Your Honor, we are talking about what is proper and what is improper in argument before the jury.

THE COURT: Well I am going to sustain the objection from the standpoint that I am going to caution you not to get into things outside the facts of this case. What may or may not take place in a different proceedings (sic) doesn't have any thing to do with this.

As we read the foregoing, we do not understand that the trial judge intended to prevent argument distinguishing the standards of conduct in civil and criminal cases. In any event, the defendant afterwards, without objection, told the jury:

. . . And the Court is going to tell you that the State has to prove that this man was in fact operating that truck in a wanton manner, with a reckless disregard for the life and property of others to make him criminally liable. In other .

words he just couldn't have been negligent, he has got to be wantonly, and reckless, either expressly or impliedly operating that truck with disregard for the life and property of others. And ladies and gentlemen that is the point.

While the trial judge's original ruling was qualified and not entirely clear to us, counsel argued the difference between criminal and civil negligence. The latter-quoted argument stated clearly that ordinary negligence was insufficient to convict. The trial judge also covered this proposition in his instructions to the jury. Any error was harmless. Rule 36(b), Rules of Appellate Procedure.

The judgment of the trial court is affirmed.

WALKER, P. J., and DUNCAN, J., concur.