STATE of Tennessee, Plaintiff-Appellee,

v.

**Emmitt Eugene RANDOLPH, Defendant-Appellant.**

Supreme Court of Tennessee, at Nashville.

Sept. 10, 1984.

Henry Haile, Nashville, for defendant-appellant.

Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, of counsel.

## OPINION

HARBISON, Justice.

Appellant Randolph and two co-defendants were charged with murder in the second degree. The presentment alleged that they conspired to sell and that one of them, Kathy Barnhill, did sell heroin to the victim, Hank W. Jones, and his wife Patricia Jones in Fairview, Tennessee on August 14, 1979. The heroin was allegedly supplied by appellant and co-defendant Kathye Smith. The victim died from a self-injected overdose on the following day.

The presentment was amended and supplemented by a bill of particulars which alleged that Jones was "merely one customer out of many" that the defendants had been supplying with drugs over a period of several months. Appellant Randolph was alleged to be a dealer or supplier, and Smith and Barnhill made sales to customers. Barnhill was selling heroin for $90 to $120 per gram and she received $20 to $30 per gram from the proceeds.

In response to motions filed by appellant, a considerable amount of documentary and tangible evidence was produced by the State. When appellant moved to dismiss the presentment for failure to charge a criminal offense, an evidentiary hearing was held, at which most of this evidence was introduced into the record by agreement. This included a summary of an oral interview with Barnhill by investigating officers and a lengthy transcript of a recorded conversation among the co-defendants and others on August 17, 1979 (two days after the death of the victim). It was agreed that all of this material could be considered in disposing of the motion to dismiss.

The trial judge held that the allegations of the presentment, supplemented as above stated, were legally insufficient to charge any degree of criminal homicide. The sale of heroin to a customer who died from a self-administered overdose was held not to constitute homicide by the seller. The State appealed from a judgment dismissing the presentment.

Only the original presentment was included in the record on appeal to the Court of Criminal Appeals. That court reversed and remanded for trial, holding that the allegations of the presentment, if proven, could sustain a conviction of murder in the second degree or of involuntary manslaughter. We granted review. After ordering the full record made before the trial court to be supplied and after considering its contents, we affirm the judgment of the Court of Criminal Appeals.

The contents of the supplementary record may or may not be established by competent evidence at the trial. We are dealing only with allegations and with *ex parte* statements filed by agreement for consideration of a motion to dismiss. Taking these as true for purposes of that motion only, they reveal the following facts.

Appellant Randolph was an established dealer in contraband narcotics. He employed several young women to operate as sellers. One of these was Kathye Smith, who was herself severely addicted. She and appellant had lived together for five years before the events involved here. He supplied her with drugs for her own use and for sale by herself and through others.

Kathy Barnhill was a nineteen-year-old seller. She obtained heroin and other drugs from appellant directly and from Smith. Eighteen-year-old Hank W. Jones and his wife Patricia were friends and regular customers of Barnhill. Both were known to her to be severely addicted, or "junkies." She made sales to them and to others on credit, including the sale on August 14, 1979. At that time she sold Mr. Jones one gram and Mrs. Jones one-half gram of heroin. She knew that this substance was "pure" or "uncut" and dangerous. She allegedly warned the purchasers not to take quantities or injections as great as on previous occasions because the heroin was "uncut" and she had not had an opportunity to dilute it. In their conversation recorded by an undercover agent on August 17, 1979 Smith, who had supplied the heroin to Barnhill, told the latter:

"I hate to tell you that I told you so, but I, I told ya, you can't say that I didn't tell you that that definitely needed to be cut before it went out on the street."

Barnhill replied that she had warned the Joneses but that subsequently Mrs. Jones denied her doing so. Barnhill said,

"Well, she's such a junkie she don't know what she's talking about anyway."

At other points, it appears that after the victim, Hank Jones, overdosed, his wife was told to take him to a hospital but that she was too deeply under the influence of

heroin to do so and simply went to sleep. None of the co-defendants was present when Mr. and Mrs. Jones injected the heroin.

Appellant Randolph, in discussing the incident with Barnhill on the tape, said that the same thing had happened to one of his customers in Cookeville two weeks earlier. He said that he regretted this but that it was

"... just one of those things, you don't force anybody to get on it and use drugs."

He also stated that "the man that did it, he didn't care ...." and that "anytime you do that you're subject to dying and he knew that ...."

For many years there have been statutes in Tennessee dealing with death or injury resulting from the sale of intoxicating liquor. One who sells, gives or furnishes such liquor for beverage purposes to another whose death is caused thereby is deemed guilty of murder in the second degree; provided, however, that if the seller or supplier is not the manufacturer and has no knowledge of any poisonous or injurious quality of the beverage, the offense is reduced to voluntary manslaughter. For injuries such as paralysis or blindness resulting from the ingestion of such beverages, the seller or supplier is deemed guilty of a felony. The offenses described are deemed to have been committed whether the injured person received the beverages directly or indirectly from the seller or supplier. T.C.A. § 39–6–915.

There are no comparable statutes dealing with death or injury resulting from the illegal sale or distribution of drugs and narcotics. Under the Tennessee Drug Control Act of 1971, various opiates and opium derivatives are listed as Schedule I controlled substances. T.C.A. §§ 52–1413, 39–6–406. Other substances may be added by designated officials upon determining that they have a high potential for abuse and have no accepted medical use in this country or lack accepted safety for use in treatment under medical supervision. T.C.A. §§ 52–1412, 39–6–405.

Heroin is one of the substances listed under Schedule I. The unauthorized manufacture, delivery, or sale of heroin and other Schedule I substances, or the possession of such substances with intent to manufacture, deliver or sell, is made a felony carrying a substantial pentitentiary sentence and fine. T.C.A. § 52–1432(a)(1)(A). It is likewise a felony to conspire to manufacture, deliver, sell or possess these substances. T.C.A. § 39–6–417(a)(1)(A). There are also special penalties dealing with the manufacture, sale or delivery of large quantities of any substance containing heroin. T.C.A. § 39–6–417(c)(1)(A). As stated, however, there is no statute imposing separate penalties on the seller or supplier of heroin or other controlled substances for death or injury to the user resulting therefrom.

There are such statutes in other jurisdictions. For example, Fla.Stats.Ann. § 782.-04(1)(a), classified as first-degree felony-murder death "which resulted from the unlawful distribution of heroin by a person 18 years of age or older when such drug is proven to be the proximate cause of the death of the user...."[1] *See Martin v. State,* 377 So.2d 706 (Fla.1979) (bargained plea to second-degree murder upheld where facts similar to those of the present case would have sustained first-degree felony-murder).

In the absence of a specific statute covering the subject, the trial judge concluded that death resulting from the unlawful sale of heroin did not constitute any degree of homicide. On appeal the State urged the Court of Criminal Appeals to adopt a second-degree felony-murder rule, under which death resulting from the violation of the drug control statutes could be deemed to be murder in the second degree. It was recognized that the first-degree felony-murder statute lists only deaths resulting from the perpetration of certain enumerat-

---

1. The statute was later broadened to include unlawful distribution of opium or any deriva-

tive thereof. Fla.Stats.Ann. § 782.04(3) (1984 Supp.).

ed felonies, among which the illicit sale of narcotics is not included. T.C.A. § 39–2–202. Under Tennessee statutes, all murders other than common-law murder in the first degree or felony-murder are deemed to be murders in the second degree. T.C.A. § 39–2–211. Malice aforethought, either express or implied, is an element of second-degree murder as well as of murder in the first degree. T.C.A. § 39–2–201.

As pointed out by the Court of Criminal Appeals in its opinion, several jurisdictions have adopted a second-degree felony-murder rule such as that advocated by the State. *E.g., Sheriff of Clark County v. Morris,* 659 P.2d 852 (Nev.1983) (requiring, however, that the seller of drugs participate in their administration and dismissing indictment where such participation was not sufficiently shown). The California courts have promulgated a second-degree felony murder rule for homicides occurring during the course of a felony that is inherently dangerous drugs. *See generally People v. Poindexter,* 51 Cal.2d 142, 330 P.2d 763 (1958) (defendant sold heroin to victim and assisted in preparing it for use but denied being present when injection was made); *People v. Taylor,* 11 Cal. App.3d 57, 89 Cal.Rptr. 697 (1970) (no participation by supplier in administration of drug required; felony-murder conviction upheld).

Other jurisdictions have declined to follow this rationale, and, in the absence of specific statutes, have not recognized death resulting from the sale of contraband drugs as constituting felony-murder. *See Napier v. State,* 357 So.2d 1011 (Ala.1978); *State v. Dixon,* 109 Ariz. 441, 511 P.2d 623 (1973); *State v. Mauldin,* 215 Kan. 956, 529 P.2d 124 (1974).

We agree with the Court of Criminal Appeals that the felony-murder rule is generally controlled by statute. We decline to adopt a general rule that death occurring during or resulting from the commission of any felony shall automatically be deemed murder in the second degree regardless of the nature of the offense proscribed. Such a rule should be promulgated by legislation if it is to be adopted.

In some jurisdictions, in the absence of statutory provisions, death resulting from the sale or supplying of contraband drugs is not deemed to constitute any degree of criminal homicide. In addition to the authorities cited above, *see People v. Pinckney,* 38 A.D.2d 217, 328 N.Y.S.2d 550 (1972), *aff'd,* 32 N.Y.2d 749, 344 N.Y.S.2d 643, 297 N.E.2d 523 (1973).

In the present case the Court of Criminal Appeals concluded that even though such death should not be considered felony-murder, nevertheless the sale of a Schedule I drug such as heroin was deemed to be so inherently dangerous to human life and so contrary to "the principles of natural, moral and public law" as to constitute an act "malum in se". Reasoning from that principle, the Court cited authorities to the effect that the criminal intent necessary to sustain a conviction for murder in the second degree can be supplied by commission of such an act. *See Whitlock v. State,* 187 Tenn. 522, 216 S.W.2d 22 (1948); *Keller v. State,* 155 Tenn. 633, 299 S.W. 803 (1927); *Farr v. State,* 591 S.W.2d 449 (Tenn.Crim. App.1979).

The court concluded that:

"... supplying heroin is malum in se. That act supplies the requisite criminal intent to render one guilty of murder in the second degree whether or not death was the natural and probable result of the act."

It also accepted the argument of the State that the sale of heroin is directly perilous to human life and that the deliberate sale of such a substance amounts to murder under the principles of *Tarvers v. State,* 90 Tenn. 485, 16 S.W. 1041 (1891).

Both the Court of Criminal Appeals and appellant have cited statistical studies and other data to establish their contentions that the ingestion of heroin is or is not inherently dangerous to human life. This, of course, is more properly a matter of evidence than of judicial notice from statistics and journals which have not been sub-

jected to cross-examination by any party. For purposes of the present motion to dismiss, however, it has been established that appellant knew that one is "subject to dying" whenever he injects heroin, and also that the heroin sold in this case was especially dangerous because it had not been diluted.

Most courts which have declined to fashion felony-murder rules in cases such as this, and those which have found no criminal offense to have been committed, have noted that death is neither the inevitable nor necessarily the most probable result of the injection of a controlled substance. Further, in cases such as the present, there often is no continuing activity by the seller and no actual participation in the injection.[2] Other courts have found a lack of "causation," as that term is used in criminal law, between the unlawful sale of a narcotic and the subsequent death or injury of the user from overdose, in the absence of some showing that the seller participated in the injection or had knowledge of other facts making him aware that the user suffered from impaired judgment or was otherwise incapable of consumption without unusual danger.

■ We are unwilling to hold that as a matter of law and in every instance death resulting from an isolated sale of a controlled substance to a stranger constitutes sufficient "malice aforethought, either express or implied ...." to constitute murder in the second degree under existing statutes. T.C.A. § 39–2–201.[3] Nor do we consider the issue resolved by resort to the distinction between acts malum in se and those malum prohibitum. The Tennessee cases cited above, *Whitlock*, *Keller* and *Farr*, involved operation of motor vehicles upon the public highways while the accused was intoxicated, not a private arms-length transaction.[4]

■ However, when all of the circumstances shown in this record are taken into account, we are of the opinion that, if competently established beyond a reasonable doubt, they could justify a conclusion by the trier of fact that appellant and his co-defendants acted with such conscious indifference to the consequences of their highly unlawful activities as to evince malice.

In the alternative, the State insists that a conviction of involuntary manslaughter could be made out. To this we agree, and counsel for appellant does not strenuously contend otherwise. A conviction for manslaughter was sustained in a case such as this in *State v. Thomas*, 118 N.J.Super. 377, 288 A.2d 32 (1972). The subsequent act of the customer in injecting himself was deemed merely to be a concurrent cause of his death and not an independent intervening act so as to insulate the seller from all criminal liability. There the seller "warned the purchaser that the stuff was good, 'not to do too much.'" 288 A.2d at 33. The

---

2. Where participation is shown, the courts have frequently imposed some form of criminal liability. *See, e.g., State v. Warwick*, 16 Wash.App. 205, 555 P.2d 1386 (1976).

3. When dealing in the theoretical and abstract, as we are forced to do here, we cannot state that death from supplying illicit narcotics could never, under any circumstances, amount to second degree murder, or, for that matter, first degree murder. Under some circumstances such supplying could amount to "murder perpetrated by poison" under T.C.A. § 39–2–202, or it could be done with actual malice and the deliberate intent of producing death or serious injury.

4. Other cases cited and relied upon by the State are: *Grindstaff v. State*, 214 Tenn. 58, 377 S.W.2d 921 (1964) (driving while drowsy); *Davis v. State*, 194 Tenn. 282, 250 S.W.2d 534 (1952) (driving while intoxicated) and *Griffin v. State*, 578 S.W.2d 654 (Tenn.Crim.App.1978) (same). The early case of *Tarvers v. State*, 90 Tenn. 485, 16 S.W. 1041 (1891) involved a deliberate shooting and a conviction for murder in the first degree. Jury instructions concerning murder in the second degree and manslaughter were held to be harmless if erroneous at all. The Court of Criminal Appeals also cited *Stallard v. State*, 209 Tenn. 13, 348 S.W.2d 489 (1961) (automobile racing on public highway); *Reed v. State*, 172 Tenn. 73, 110 S.W.2d 308 (1937) (improper passing on highway; involuntary manslaughter conviction sustained); and *Cole v. State*, 512 S.W.2d 598 (Tenn.Crim.App. 1974) (drag racing).

**948**

seller was also shown to be a user as well as a supplier and therefore aware of the danger of an overdose.

The offense of involuntary manslaughter is defined in this state as:

"... the unlawful killing of another without malice, either express or implied ... in the commission of some unlawful act." T.C.A. § 39–2–221.

The offense was discussed in an early case as follows:

"Involuntary manslaughter is where it plainly appears that neither death nor bodily harm was intended by the party killing, but death is accidentally caused by some unlawful act, or any action not strictly unlawful in itself, but done in an unlawful manner and without due caution." *Lee v. State*, 41 Tenn. 62, 67 (1860).

*See also Letner v. State*, 156 Tenn. 68, 299 S.W. 1049 (1927).

We have no way of knowing what evidence will be adduced upon the trial of this case. From the standpoint of strict legal theory, in our opinion it is possible that a case of murder in the second degree or of involuntary manslaughter could be made out on the basis of the present record.

Although an issue of causation will be presented whether the charge be murder or manslaughter, we are of the opinion that the act of the customer in injecting himself is not necessarily so unexpected, unforeseeable or remote as to insulate the seller from criminal responsibility as a matter of law. What the evidence will actually show in this regard is a matter to be determined upon the trial.

The judgment of the Court of Criminal Appeals is affirmed, and the cause is remanded to the trial court for further proceedings. Costs of the appeal are taxed to appellant.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.