STATE of Tennessee, Appellant,

v.

James Lowe BURROW, Frederick S. Stanley, James R. Tully, Jr. and Jerry E. Ward, Appellees.

No. 88–86–III.

Court of Criminal Appeals of Tennessee, at Nashville.

March 21, 1989.

of a sentence under Rule 35 will often result in a duplication of effort by this court in its review

of the same issue.

W.J. Michael Cody, Atty. Gen., Albert L. Partee, III, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Floyd Price, Asst. Dist. Atty. Gen., Nashville, for appellant.

Bob Lynch, Jr., Gilbert & Milom, Nashville, for appellee, Burrow.

David L. Raybin, Hollins, Wagster & Yarbrough, Roger T. May, Nashville, for appellee, Stanley.

Charles R. Ray, Ray & Housch, Nashville, for appellee, Tully.

William R. Willis, Jr., Marian F. Harrison, Willis & Knight, Nashville, for appellee, Ward.

## OPINION

SCOTT, Judge.

The appellees were indicted under two separate indictments for various illegal acts in connection with the sales of "securities," in violation of T.C.A. §§ 48–2–121(a)(1), 48–2–121(a)(2), 48–2–110(f)(1), and 48–2–104.[1] A hearing was held before the trial judge on July 30, 1987, at which no oral testimony was heard, but numerous documents were introduced as collective exhibits during arguments by counsel. The documents were not authenticated in any way and some are not even signed, but consist of drafts of agreements. Following this hearing the trial judge took the matter under advisement, and, on October 9, 1987, entered two orders dismissing four counts of each indictment, finding that the documents were not "securities" as that term is defined under Tennessee law. Six days after the orders were entered, the state filed a "motion to reconsider dismissal of indictment" in case number 87–W–269. Someone, apparently the trial judge, wrote the word "denied" on the motion. The state contends that this action occurred on November 5, 1987, and the state's notice of appeal was filed December 3, 1987. No similar motion was filed in the other case.

The state contends on appeal that the trial judge erred by entering a "summary judgment" on a question about which there is a genuine issue of a material fact. The state further contends that summary judgments are improper in criminal cases.

■ Some of the appellees contend as a preliminary matter that the notice of appeal was not timely filed and that the appeal should be dismissed.[2] In support of this contention they contend that there is no such thing as a "motion to reconsider" and that such a motion cannot be used to extend the time for filing the notice of appeal.

Rule 4(a), T.R.A.P., provides that the notice of appeal shall be filed and received by the clerk of the trial court "within 30 days after the date of entry of the judgment appealed from." However, the Rule also provides that "in all criminal cases 'the notice of appeal' document is not jurisdictional, and the filing of such document may be waived in the interest of justice" by the appellate court. This rule tracks T.C.A. § 27–1–123, which likewise provides for waiving the notice of appeal in criminal cases. The appellees argue that this provision applies only to defendants and not to the state. That, of course, would be advantageous to the appellees, but would not necessarily be "in the interest of justice."

We hold that "what is good for the goose is also good for the gander." The notice of appeal can be waived by this Court "in the interest of justice" in "criminal cases" without regard to whether it is the defendant or the state seeking waiver. In this case we exercise that authority and waive the timely filing of the notice. Therefore,

1. The first indictment, in Case Number 87–W–205, was an eighty-six count indictment involving Southern Energy Partners, Inc. and involved the appellees, James Lowe Burrow and Frederick S. Stanley. Only the first four counts of the indictment were dismissed.

In Case No. 87–W–269, a fourteen count indictment was returned against James Lowe Burrow, James R. Tully, Jr. and Jerry E. Ward. It involved an enterprise known as Beef n' Bird. Only counts one through four of that indictment were dismissed.

2. Mr. Tully did not raise this issue.

it is unnecessary for us to determine whether a "motion to reconsider" will extend the time for filing the notice of appeal.

One appellee, Mr. Tully, also argues that the state is precluded from appealing this issue because the District Attorney General entered into an agreement with defense counsel that the definition of a "security" should be decided by the trial court by hearing a motion to dismiss the indictment. In Mr. Tully's view, the state, by that agreement, has waived appellate review of the issue.

◼ In *State v. Randolph*, 676 S.W.2d 943, 944 (Tenn.1984), a pre-trial procedure was utilized by which the trial judge decided a motion to dismiss after considering items of evidence at an evidentiary hearing, the evidence being introduced by agreement as it was in this case. *Randolph* involved a matter of law, the issue being whether one could be charged with murder in the second degree from having supplied heroin to a victim who later died from a self-injected overdose. That case did not involve the trial judge deciding a *factual* issue concerning an element of the offense as was done in this case. Furthermore, even though the state agreed to the procedure in *Randolph*, the state appealed to this Court when the trial judge ruled adversely to its position. *Id.* After this Court reversed and remanded the case to the trial court for trial, the defendant appealed to the Supreme Court. Thus, while the procedure was similar in *Randolph*, that case does not stand for the proposition that by agreeing to a hearing on the motion in the trial court the state foreclosed any possibility of seeking appellate review of the trial judge's determination.[3]

◼ Summary judgments are creatures of our Tennessee Rules of Civil Procedure. Rule 56, Tenn.R.Civ.P. There is no procedure for adjudicating questions of fact in criminal cases in the way that summary judgments are decided in civil cases, i.e., by pleadings, affidavits, opposing affidavits, depositions, interrogatories, answers to interrogations, admissions and documentary evidence. Rules 56.03 and 56.05, Tenn.R. Civ.P. The state is correct in its contention that summary judgment is a procedure which simply does not exist in criminal actions.

◼ Turning to the substantive question of law, it is clear that the trial judge erred in holding that the documents associated with this transaction do not constitute "securities." T.C.A. § 48–2–121(a)(1) provides that "(i)t is unlawful for any person, in connection with the sale or purchase of any 'security' in this state, directly or indirectly (t)o employ any device, scheme or artifice to defraud." Likewise, in the following subsection it is declared unlawful to make any untrue statement of a material fact or omit to state a material fact necessary to make any statement made "not misleading" in connection with the sale or purchase of any "security." T.C.A. § 48–2–121(a)(2). T.C.A. § 48–2–110(f)(1) provides that every "issuer" of any "security," as "issuer" is defined in T.C.A. § 48–2–102(8), shall register an an "issuer-dealer" unless one of two exemptions applies. T.C.A. § 48–2–104 provides that it is unlawful to sell any "security" in this state unless it is "registered" or "exempted" from registration under T.C.A. § 48–2–103.

The definitional section of the Tennessee Securities Act of 1980, codified at T.C.A. § 48–2–102(12), defines a "security" as follows:

"Security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract,

---

**3.** While it may be possible for the state to agree to accept a trial judge's determination of such issues and agree not to appeal to either this Court or the Supreme Court, it would appear that the Attorney General and Reporter for the State of Tennessee would be a necessary party to such an agreement. T.C.A. § 8–6–109(b)(2) provides that he will "attend to all business of the state, both civil and criminal" in the state appellate courts. This authority, granted by the General Assembly, is exclusive and he is the only officer authorized to represent the state in our appellate tribunals. *State v. Simmons*, 610 S.W.2d 141, 142 (Tenn.Crim.App.1980).

voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security" does not include:

(A) Currency;

(B) A check (whether or not certified), draft, bill of exchange, or bank letter of credit;

(C) A note or other evidence of indebtedness issued in a mercantile or consumer, rather than an investment, transaction;

(D) An interest in a deposit account with a bank or a savings and loan association; or

(E) An insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period.

One of the elements of each of the offenses with which the appellees are charged is the fact that the transactions involved a "security." Like all other questions of fact in a criminal case, this is an issue of fact for the finder of fact, which, unless properly waived by both parties pursuant to Rule 23(a), Tenn.R.Crim.P., is the jury.

In *State v. Feldman,* 522 So.2d 503, 505 (Fla.App.1988), the trial court undertook to do precisely what the trial court did in this case. At a hearing on a motion to dismiss, the court resolved the question of whether certain documents associated with an allegedly unlawful transaction were within the statutory definition of a "security" as that term is defined in the Florida Securities and Investor Protection Act. The appellate court held that the trial court had erroneously assumed the role of fact finder and reversed and remanded the case for trial.

The court remembered that in a previous case it had noted that "a security is not always an easily recognized creature. Several considerations are necessary, such as what character the investment is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out by the sellers." *Id.,* citing *Farag v. Nat. Databank Sub., Inc.,* 448 So.2d 1098, 1101 (Fla.App.1984), which cited *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In the procedural setting of a motion to dismiss, it is inappropriate for trial courts to attempt an analysis of the charged transactions in their entirety. The determinations by the trial court, grounded in that case upon cryptic, unsworn statements of counsel for the defendants, were "properly resolvable only upon a trial." *State v. Feldman,* supra.

In *Roe v. U.S.,* 287 F.2d 435, 440 (5th Cir.1961), the Court decided as a matter of law that the transactions, if credited, would constitute the sales or delivery of a "security," thereby requiring registration with the Securities and Exchange Commission. Again, the appellate court held that the trial judge usurped the function of the "trier of fact," i.e., the jury, since the question of whether the instruments involved were securities hinged on "the peculiar facts of the setting."

Here, as in those cases, the trial judge took upon himself the role of fact finder when he determined that these documents were not securities. Therefore, the judgments dismissing those counts of the indictments are reversed and these causes are remanded to the trial court for trial upon the indictments where the issue of whether each alleged transaction involved a security will be decided by the fact finder.

■ Messrs. Ward and Burrow contend that the transactions with which they are charged fall within the small transaction exception of T.C.A. § 48–2–103(b)(4), which exempts transactions from the provisions of T.C.A. §§ 48–2–104 and 48–2–113 if they meet three relatively complicated criteria. Whether a transaction falls within or without the exemption is likewise a fact ques-

tion for the trier of fact at the trial, not for the trial judge at a hearing on a motion to dismiss. The trial judge in this case did not even reach that question, since he found that the transaction did not involve a "security." Thus, it certainly would not be appropriate for an appellate court to find that the exemption was applicable.

■ Finally, Mr. Ward contends that the term "security" is so vague that dismissal of the charges is required. He contends that the dearth of Tennessee cases interpreting the term requires dismissal.

We note that there are numerous cases from other jurisdictions, both state and federal, cited in the briefs of the parties interpreting various statutory definitions of the term "security." The fact that there are no Tennessee cases does not preclude the prosecution of the appellees for alleged violations of the statutes. It is only after someone is prosecuted that the appellate courts have the opportunity to write opinions interpreting the statutes. Taken to its logical extreme, this argument would produce a "Catch 22" situation that would preclude the prosecution of anyone under any new criminal statute, since no one could be prosecuted until the statute was interpreted and the statute could not be interpreted until someone was prosecuted.

None of the arguments advanced by the appellees urging affirmance of the trial court's judgment have merit. The state's argument that summary judgment is unknown to the criminal law has merit. Therefore, the judgment is reversed and the cause is remanded for trial.

DAUGHTREY, J., and WILLIAM S. RUSSELL, Special Judge.