# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2014

## JOSEPH POLLARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-04223     Honorable Paula L. Skahan, Judge**

───────────────

**No. W2013-01398-CCA-R3-PC  - Filed August 27, 2014**

───────────────

The Petitioner, Joseph Pollard, appeals the Shelby County Criminal Court's denial of post-conviction relief.  He was convicted of first degree murder, attempted voluntary manslaughter, and aggravated assault and received an effective sentence of life with the possibility of parole.  In this appeal, the Petitioner contends that he received ineffective assistance of trial counsel due to trial counsel's failure to qualify an expert witness or anticipate the trial court's rejection of the witness's qualifications.  The Petitioner further claims that appellate counsel was ineffective due to his failure to include the same issue on direct appeal.  Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Varonica R. Cooper, Memphis, Tennessee, for the Petitioner-Appellant, Joseph Pollard.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was indicted by a Shelby County jury for first degree murder, attempted voluntary manslaughter, and aggravated assault following the fatal shooting of his ex-girlfriend, Katrina Hayes.  The shooting occurred in the victim's driveway in front of her two teenage children, each of whom testified at trial as eyewitnesses to their mother's death.  K.H., the victim's daughter testified that

the [Petitioner], pulled into [their] driveway behind them, blocking them in the carport. He came up to the victim's door and demanded that she get out of the car and "stop f---ing with him." K.H. saw a gun in his hands. The victim pleaded with him and told her children to run. As K.H. and her brother were getting out of the car and running away, she heard three shots. She and her brother ducked behind the defendant's car, but then her brother ran across the yard, and the defendant fired a shot at him. They both began running down the street, and the defendant got into his car and drove away in the opposite direction. K.H. called 911 and was present when the paramedics arrived and began working on the victim. K.H. testified that the victim had dated the defendant for approximately one year, but she had ended the relationship the week prior to her death because the defendant began using crack cocaine.

On cross-examination, K.H. agreed that she originally told police that she did not see the gun.

State v. Joseph Pollard, No. W2008-02436-CCA-R3-CD, 2010 WL 1874641, at *1 (Tenn. Crim. App. May 11, 2010), perm. app. denied (Tenn. Nov. 10, 2010).

A.H., the victim's son, corroborated K.H.'s testimony and testified that he was not injured when the defendant shot at him. Id. A patrolman with the Memphis Police Department responded to the victim's house, observed the victim lying in a pool of blood on the ground next to her van, and spoke to the victim about what happened. Id. The victim was alert and in non-critical condition when the ambulance transported her. Id. The Petitioner was taken into custody the next day on an unrelated charge. Id. at *2. At the time of his arrest, the Petitioner was in possession of a loaded Ruger pistol, which was later found to be consistent with the bullet cartridges retrieved from the scene of the shooting. Id. After he was advised of his Miranda rights, the Petitioner told an investigator "that he had seriously messed up" and "that [the investigator] knew very well that he didn't need to give a statement because his butt was going to rot in jail." Id.

The proof from the Petitioner's trial most relevant to the issues raised in his petition for post-conviction relief pertains to the medical testimony provided by Dr. Karen E. Chancellor, the Shelby County Medical Examiner, and Dr. O'Brian Cleary (O.C.) Smith, a forensic pathologist and former Shelby County Medical Examiner, an expert offered by the defense.

[Dr. Chancellor] testified that the victim received two gunshot wounds. One entrance wound was located on the left side of the victim's abdomen. The bullet passed through her body, damaging blood vessels, internal organs and

bones, and exited through her left buttock. The second entrance wound was located on the back of the victim's right arm. The bullet broke the bones in the arm and exited through the front of the arm. Dr. Chancellor testified that the gunshot wound to the victim's abdomen caused hemorrhaging that resulted in her death.

On cross-examination, Dr. Chancellor testified that the victim was in exploratory surgery for three hours after the shooting. The surgeons estimated that she lost twelve liters of blood. Dr. Chancellor said that the normal human body holds five liters of blood. Dr. Chancellor testified that both of the victim's wounds were perforated, meaning the bullet exited the body.

. . . .

[Dr. Smith] testified that one .45 caliber round would have been capable of causing both of the victim's gunshot wounds by entering and exiting her arm and then entering and exiting her torso. He further testified that the victim expired approximately two hours after arriving at the Regional Medical Center.

On cross-examination, Dr. Smith said that it was possible that two bullets caused the victim's wounds. He did not disagree with the victim's cause of death.

Id. at *2-3. The jury convicted the Petitioner as charged, and he appealed to this court. See id. On direct appeal, the Petitioner argued that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion for new trial based on comments made by the prosecutor during closing argument. Id. at *1. Significantly, the Petitioner "[did] not dispute that he fired the bullet that struck [the victim]." Id. at *4. Rather, the Petitioner maintained that the evidence was insufficient to prove premeditation because of Dr. Smith's testimony that one bullet could have caused all of the victim's injuries and because K.H. and A.H. testified that they were not watching when the defendant shot the victim. Id. The Petitioner's convictions were affirmed by this court, and his application for permission to appeal to the Tennessee Supreme Court was denied on November 10, 2010.

On October 29, 2011, the Petitioner filed a pro se petition for post-conviction relief alleging numerous grounds of ineffective assistance of counsel. He was appointed counsel by the post-conviction court, and an amended petition was filed on March 22, 2012. A hearing was held on the amended petition on February 27, 2013.

At the hearing on the petition for post-conviction relief, the Petitioner testified that he was represented by two attorneys, trial counsel and co-counsel. He said that trial counsel visited with him "quite a few" times prior to trial. However, co-counsel was with trial counsel during the visits only "sometimes." The Petitioner said that he told counsel and co-counsel that the victim's children lied at the preliminary hearing. The Petitioner testified that the victim's children said that "they see me standing there [two feet from the victim and] shoot three times." Without further elaboration, the Petitioner said that counsel and co-counsel failed to question the children or inform the jury about it. The Petitioner also complained about other inconsistencies in the proof at trial and said that he unsuccessfully attempted to discuss these issues with appellate counsel. Regarding appellate counsel, the Petitioner said that he "never talked with that attorney."

Counsel testified that she had been a criminal defense attorney for nearly twenty years. She explained that the Petitioner was initially facing the death penalty; therefore, he was represented by the Shelby County Public Defender's capital defense team. She remained on the Petitioner's case after the State withdrew the death penalty notice because it was too close to the Petitioner's trial date. She said that co-counsel also represented the Petitioner as her "junior partner." Counsel testified that it was difficult to prepare for trial because the Petitioner "would not really cooperate[.]"

In explaining the evidence presented at trial, counsel said that the paramedics did not know the extent of the victim's injuries when they arrived. She recalled that the victim was transported in noncritical condition, which was significant because the paramedics did not realize the victim's injuries were "mortal." Counsel employed Dr. O.C. Smith as an expert to determine (1) whether a single bullet could have caused the injuries to the victim and (2) whether the victim would have survived had she received medical attention sooner. Counsel testified that the State objected to Dr. Smith testifying as an expert "in that field." She explained that the trial court conducted a hearing on the issue, heard their offer of proof, and sustained the objection of the State.

On cross-examination, counsel explained that the purpose of Dr. Smith's testimony was twofold. Dr. Smith was offered and permitted to testify as an expert in ballistics and guns in order to demonstrate that the victim's wounds could have been caused by a single bullet, rather than two or three bullets. Counsel believed this would mitigate the element of premeditation. Counsel also attempted to qualify Dr. Smith as an expert in advanced trauma and life support (ATLS) in order to support her theory that had the paramedics intervened sooner the victim may have survived. Counsel agreed that she did not anticipate the trial court not allowing Dr. Smith to testify in this regard. She further agreed that she did not "look for another expert" to replace Dr. Smith. Asked if she would have done anything

-4-

differently regarding her "intervening factor" defense theory, counsel replied, "I can't think of anything differently I would have done."

Appellate counsel testified that he had been practicing law for nearly thirty years, with an emphasis on appellate work for almost four years. He conceded that he did not meet with the Petitioner prior to filing the direct appeal in this case. Appellate counsel said that he did not include the issue of whether the trial court erred in refusing to allow Dr. Smith to testify as an expert in ATLS in the direct appeal because the trial court, in fact, allowed Dr. Smith to testify. Dr. Smith's testimony was limited to forensic pathology and ballistics. The trial court refused to qualify Dr. Smith as an ATLS expert because Dr. Smith had not practiced in this field for twelve years, and he had never testified as an expert in this area. Additionally, appellate counsel said that this issue was subject to the trial court's discretion, and he did not believe that the trial court had abused its discretion. Based on these considerations, appellate counsel opined that the issue "was [not] going anywhere."

At the close of the hearing, there was some discussion of a continuance in order to allow co-counsel to testify. However, as noted in the State's brief, there is no transcript containing co-counsel's testimony in the appellate record. On April 26, 2013, the post-conviction court denied relief by written order, and the Petitioner timely filed the instant appeal.

## ANALYSIS

The Petitioner contends that he received ineffective assistance of both trial and appellate counsel due to (1) trial counsel's failure to qualify an expert witness needed for a critical defense issue and (2) appellate counsel's failure to include certain issues on appeal.[1] The State contends that he received effective assistance at trial and on direct appeal. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2012). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their

---

[1] A litany of other issues were included in the petition for post-conviction relief. However, the Petitioner has not included these issues in his brief to this court. Accordingly, these issues have been waived.

testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f) (2012); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697). The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the

petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner contends that he received ineffective assistance of trial counsel due to trial counsel's failure to qualify Dr. Smith as an expert or obtain another qualified expert to testify regarding the "intervening factor" defense. The State responds that trial counsel was not deficient in failing to qualify Dr. Smith as an expert. In regard to this issue, the post-conviction court stated:

> One of trial counsel's theories of defense was that Petitioner should not have been found guilty for murder because the victim should not have died from the shot(s) alone– better medical care could have saved her life. Planning to present this theory, trial counsel called an expert witness, but the trial court refused to admit the witness as an expert in emergency trauma, and limited the expert testimony to forensic analysis. The trial court's reasoning was that the expert had not practiced in the emergency trauma field since 1995 – thirteen years prior to the trial. Trial counsel was unable to secure a replacement expert on this point. Petitioner thus argues that trial counsel was ineffective for failing to recognize that the expert was unqualified to speak on that specific theory of defense.

> While it is possible that this oversight could constitute unreasonable performance on trial counsel's part, Petitioner fails to present enough evidence to establish prejudice. Without further explanation, Petitioner concludes that the witness's testimony would have changed the outcome of the trial. He does not delve into what exactly the witness would have said if allowed to testify (or what a replacement expert would have said); he merely asserts that the

-7-

absence of this testimony prejudiced the outcome. But without knowing the degree of confidence with which an expert would have supported trial counsel's defense theory, this Court is left to speculate on the strength of the influence of that lost testimony. And speculation is insufficient to establish a 'reasonable probability' that the outcome would have been different; thus, Petitioner has not established prejudice here. (Internal citations omitted).

The only testimony regarding the "intervening factor" defense was from the offer of proof by Dr. O.C. Smith, which was provided as an exhibit to the post-conviction court. We recognize that Dr. Smith's qualifications as an expert in the field of ATLS were rejected by the trial court. However, even considering the testimony that he provided, the Petitioner would not prevail. According to Dr. Smith, there was a "critical gap" in the reports he reviewed; namely, the time at which the EMS actually departed the original scene, the report from the morbidity and mortality conference, and the report of the operation and discharge summary. Without this information, Dr. Smith expressed uncertainty that the "outcome would be different" or that the victim would have survived. Asked pointedly if it was his opinion had the victim received "surgery earlier she would have lived from this injury," Dr. Smith said, "No, sir. My opinion is that there are . . . other circumstances that should be brought to the jury for their consideration. I cannot tell you and no one can tell you that this is . . . the reason why she died."

Moreover, we interpret the Petitioner's "intervening factor" defense as an attack on the proximate cause of the victim's death, which is a factual issue to be determined by the trier of fact based on the evidence at trial. State v. Randolph, 676 S.W.2d 943, 948 (Tenn. 1984). It has long been settled that a "defendant cannot escape the consequences of his wrongful act by relying upon a supervening cause when such cause naturally resulted from his wrongful act." Letner v. State, 299 S.W. 1049, 1051 (1927) (citing Corpus Juris); Odeneal v. State, 157 S.W. 419, 421 (1913). In addition, "[o]ne who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause." Odeneal, 157 S.W. at 421. When a defendant seeks to break the chain of causation based on a supervening cause, the victim's death must be so "unexpected, unforeseeable or remote" that the defendant's actions could not legally be the cause of the death. Randolph, 676 S.W.2d at 948. Negligent medical treatment received as a result of a defendant's criminal conduct is foreseeable and will not break the chain of causation. Anthony Bond v. State, No. W2011-02218-CCA-R3-PC, 2013 WL 275681 (Tenn. Crim. App. Jan 24, 2013) (citing People v. Saavedra–Rodriguez, 971 P.2d 223, 226 (Colo.1999), perm. app. denied (Tenn. Jun 11, 2013)).

It was undisputed at trial that the Petitioner shot the victim on the day of the offense. On the same day, the victim was transported to the hospital and died within three hours of her arrival. Drs. Chancellor and Smith agreed that the victim died as a result of a gunshot wound. Based on these facts, the victim's death was not unexpected, unforeseeable, or a remote consequence of the Petitioner's actions. But for the Petitioner's act of shooting the victim, she would not have needed medical assistance or intervention. As such, we conclude that any delay in the victim receiving medical treatment on the day of the shooting was not an intervening cause that absolved the Petitioner of criminal responsibility. See Andrew Thomas v. State, No. W2008-01941-CCA-R3-PC, 2011 WL 675936 (Tenn. Crim. App. Feb. 23, 2011) (concluding that trial counsel was not ineffective for failing to call a medical expert to challenge the victim's cause of death), perm. app. denied (Tenn. Aug. 25, 2011). Therefore, viewing the proof in the light most favorable to the State, a rational jury could have found that the Petitioner fatally shot the victim, which was the proximate cause of her death. The Petitioner has failed to demonstrate prejudice. He is not entitled to relief.

Next, the Petitioner argues that appellate counsel was deficient in failing to include the above issue – whether the trial court erred in refusing to allow Dr. O.C. Smith to testify as an expert in the field of ATLS – in his direct appeal. The same principles that apply to determining whether trial counsel was ineffective apply when determining the effectiveness of appellate counsel. Campbell v. State, 904 S.W.2d at 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful. See e.g., Smith v. Robbins, 528 U.S. 259 (2000). If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, the reviewing court must determine the merits of the issue. Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004). If an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and the petitioner will have suffered no prejudice. Id. Appellate counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. Id.

The Petitioner maintains that he suffered prejudice because he would have prevailed on appeal based on State v. Thomas, 158 S.W.3d 361, 416 (Tenn. 2005). The defendants in Thomas were convicted of first degree felony murder during the perpetration of a robbery. They saw an armored truck guard with a money deposit bag leaving a drug store in Memphis. Thomas, 158 S.W.3d at 373. Defendant Thomas ran up, shot the guard in the back of the head, grabbed the deposit bag, and jumped into a white car being driven by Defendant Bond. Id. at 374. The guard, the victim in the case, did not immediately die from the gunshot wound to the back of his head. However, the gunshot damaged his spinal cord and resulted

-9-

in paraparesis (a profound weakness in one's abdomen and legs) and neurogenic bladder (a loss of bladder and bowel control due to nerve damage). Two and a half years after the shooting, the victim died. Id. The medical examiner for Shelby County, Tennessee, Dr. O.C. Smith, considered the victim's death a homicide and testified that the cause of death was sepsis, "secondary to the rupture of his bladder resulting from spinal cord injury caused by the gunshot wound to his head." Dr. Smith stated that the "infection from the ruptured bladder" could be "directly related back to [the] gunshot wound." Id. at 374.

The Petitioner essentially argues that if Dr. Smith was qualified by the State as an expert in Thomas and permitted to testify regarding the circumstances of the victim's death, i.e. intervening factors or the lack thereof, then the Petitioner should have been able to do the same in his trial. The Petitioner insists that Dr. Smith should have been permitted to testify as to the course of the victim's treatment after she was shot based solely on his certification as an expert in the area of forensic and clinical pathology. We begin our analysis of this issue by acknowledging that the substance of Dr. Smith's testimony in Thomas was indeed similar to the testimony sought to be admitted in the instant case. However, it appears that Dr. Smith testified in Thomas as the Shelby County Medical Examiner, not as an ATLS expert. The trial court in this case rejected Dr. Smith's expertise in the area of ATLS because Dr. Smith had not maintained this speciality for twelve years, and he had never previously testified as an ATLS expert.

Appellate counsel aptly testified at the post-conviction hearing that he did not raise this issue on appeal because he did not believe that the trial court had abused its discretion in denying relief on this issue. Based upon our review, we agree. State v. Ballard, 855 S.W.2d 557, 562 (Tenn.1993); State v. Davis, 872 S.W.2d 950, 954 (Tenn. Crim. App.1993) (noting that the qualification, admissibility, relevancy, and competency of expert testimony are matters largely left to the discretion of the trial court and will be overturned on appeal if arbitrarily exercised). Moreover, we have previously concluded that any delay in the victim receiving medical attention did not absolve the Petitioner of criminal responsibility in this case. Thus, the Petitioner is unable to show that any error in failing to raise this issue on appeal would have effected the outcome of his case. Because the Petitioner has failed to demonstrate deficient performance of appellate counsel or prejudice arising therefrom, he is not entitled to relief.

**CONCLUSION**

Upon review, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE