IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2026 Session

**ROY ROBINSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 13-05184        Jennifer Johnson Mitchell, Judge

_____

**No. W2024-01916-CCA-R3-PC**
_____

The petitioner, Roy Robinson, appeals the denial of his petition for post-conviction relief, asserting his case should be remanded for a new evidentiary hearing or, alternatively, that the post-conviction court erred in finding he received the effective assistance of counsel. Following a thorough review of the record, the briefs, and oral arguments of the parties, we dismiss the appeal for lack of jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and TOM GREENHOLTZ, JJ., joined.

Josie S. Holland (on appeal) and Rosalind Elizabeth Brown (at hearing), Memphis, Tennessee, for the appellant, Roy Robinson.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Steve Mulroy, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

The petitioner was convicted of second-degree murder and aggravated assault, and the trial court imposed an effective sentence of twenty years to be served at one hundred percent. *See State v. Robinson*, No. W2016-00263-CCA-R3-CD, 2017 WL 2199174 (Tenn. Crim. App. May 18, 2017), *perm. app. denied* (Tenn. Aug. 18, 2017). This Court affirmed the judgments of the trial court on direct appeal, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.* A summary of the facts

underlying the petitioner's conviction can be found in our prior opinion from his direct appeal. *Id.* at *1-*2.

The petitioner filed a timely pro se petition for post-conviction relief, alleging nine claims of ineffective assistance and requesting the appointment of counsel. The post-conviction court appointed counsel, and six months after her appointment, post-conviction counsel filed a notice informing the post-conviction court that no amended petition would be filed. Just over three years later,[1] post-conviction counsel filed a "first amended petition," alleging trial counsel[2] was ineffective in: (1) failing to pursue a 404(b) hearing to exclude prejudicial character testimony about the petitioner regarding his gang involvement and nickname; (2) failing to effectively pursue the petitioner's self-defense theory which would have included seeking testimony from the security guards at the apartment complex; (3) the manner in which she pursued the motion to suppress the petitioner's statement to law enforcement; (4) advising the petitioner not to testify; and (5) failing to challenge the enhancement factors at sentencing. The first amended petition did not include factual allegations supporting each claim and was not verified under oath. *See* Tenn. Code Ann. § 40-30-104(e).

On June 30, 2022, the petitioner mailed a pro se "second amended petition" to the post-conviction court, the district attorney, and post-conviction counsel. In the second amended petition, the petitioner provided supporting facts for each of the claims listed in the first amended petition and included two additional claims of ineffective assistance of counsel: (1) "failing to object to a fatal variance" related to the location of the shooting and (2) failing to subpoena a member of the gang unit to testify as an expert or rebuttal witness regarding a lack of evidence the petitioner was in a gang. Post-conviction counsel received the petitioner's second amended petition on July 5, 2022, and post-conviction counsel informed the court she was aware of the petitioner's claims but "what [post-conviction counsel] put in [her] amended petition will be the allegations that [she] thought [should be presented to the court]." The second amended petition was file stamped received by the post-conviction court on July 27, 2022.

The post-conviction court conducted an evidentiary hearing on the petition over the course of two dates: July 6 and July 10, 2022. At the July 6th hearing, the petitioner recounted that two of the State's witnesses, Mr. Cash and Ms. White, testified at trial that he was in a gang. The petitioner contended trial counsel was ineffective because she should

---

[1] The record is unclear as to the reason for the delay, but we observe the COVID-19 pandemic occurred during the interim time period.

[2] At trial, the petitioner was represented by two attorneys. Most, if not all of his claims refer to one attorney; however, the testimony during the post-conviction hearing references both attorneys. Therefore, we will refer to lead counsel as "trial counsel" and the petitioner's other counsel as "co-counsel."

have requested a 404(b) hearing when Mr. Cash and Ms. White stated the petitioner "was having a gang barbe[q]ue and that [he] was a gang member[.]"  The petitioner claimed it "prejudiced the jury" for the witnesses to insinuate he was engaged in unlawful activity. The petitioner maintained that he repeatedly told trial counsel he was not in a gang, but she ignored his "request to address a prejudicial issue that was false, that was presented to the jury as true when it wasn't."  However, the petitioner admitted the witnesses did not testify the barbeque was "a gang barbe[q]ue," only that there was a barbeque that day, many of the attendees were in a gang, and members of more than one gang were present.

Along the same vein, the petitioner alleged trial counsel should have sought suppression of evidence that his nickname was "Max Knockout" and of Sergeant Burton's supplemental report because the report stated that "[the victim] was shot by a gang member."  However, the petitioner acknowledged co-counsel successfully objected to Sergeant Burton's testimony related to his gang membership, but he then complained trial counsel "reinjected it back to the jury in her closing arguments . . . [by] stating that my . . . client is a gang member."  The petitioner admitted, though, that this might have been part of counsel's defense strategy.

The petitioner initially asserted he did not give a statement to police, but he then recalled signing a statement and it being introduced at trial.  The petitioner recounted he was arrested at a hotel, without a warrant, and was held against his will for questioning. During his interview with the police, the petitioner was denied his right to counsel and was under the influence, dehydrated, and vomiting.  Officers also threatened the mother of his child, essentially coercing him into giving a statement.  Immediately after his interview, the petitioner was housed in a withdrawal assessment unit, which the petitioner averred proved he was under the influence and incapable of waiving his rights.  A suppression hearing was held regarding the petitioner's statement, but counsel did not include any of the aforesaid information in her motion or discuss it at the hearing.  The trial court denied the motion to suppress, and the petitioner's statement was entered at trial.  The petitioner admitted he was able to avoid testifying and being subject to cross-examination because his statement was introduced and it presented his theory of the case.  The petitioner also agreed that cross-examination might have been detrimental to him.

The petitioner claimed he wanted to testify, but counsel essentially coerced him into not testifying by failing to address the issues he wanted addressed.  As he explained, "[i]f those issues were not addressed, why would I have gotten on the stand and set myself up for failure?"  However, the petitioner acknowledged that he told the trial court it was his decision not to testify and that he was happy with the decision.

The petitioner alleged there was a "fatal variance" between the language in the indictment and proof at trial with regard to the location of the shooting.  He believed the

discrepancy affected his self-defense claim because the incident actually happened "in a place where [he] had the right to be[.]" It was later clarified that the indictment did not contain an address for the incident, and the petitioner simply disagreed with the location testified to by the witnesses.

With regard to his self-defense claim, the petitioner explained he thought the victim had a gun, which was why he pulled out a gun. He believed there were security guards on the premises who would have been willing to testify the victim had a gun, but trial counsel did not call them to testify. The petitioner agreed that the jury received an instruction on self-defense.

The petitioner lastly averred he was not classified as a validated gang member by law enforcement as he had never admitted to being in a gang and had no gang-related tattoos, brands, symbols, logos, or colors. However, the petitioner admitted he "hung out" with the Gangster Disciples. The petitioner wanted counsel to subpoena a member of the gang unit to testify as an expert on his behalf, but counsel did not acknowledge his request.

At the July 10th hearing, post-conviction counsel first informed the post-conviction court she had received a second "second amended petition" from the petitioner in the days since the first hearing. After discussion, the post-conviction court ruled it would not allow the petitioner to file the second "second amended petition" because the matter had been pending for several years and needed to reach a conclusion, but it made the petition an exhibit to the hearing in the event of appellate review. The court also denied the petitioner's request for new post-conviction counsel.

Thereafter, trial counsel, a twenty-eight-year veteran of the Public Defender's Office, was called to testify at the hearing. Trial counsel recalled the petitioner had given a statement to the police, which counsel thought was beneficial because it would allow her to argue self-defense without calling the petitioner to testify. However, the petitioner was insistent that counsel file a motion to suppress the statement, and she eventually obliged. The petitioner told counsel his statement was coerced because the police threatened his girlfriend. The petitioner testified at the suppression hearing that he had been under the influence, intoxicated, and tired at the time he gave the statement. He also testified about having issues with his eyesight and the alleged coercion involving his girlfriend. According to trial counsel, the petitioner did not make a good witness, and his testimony did not go well.

The petitioner's girlfriend also testified at the suppression hearing. Like the petitioner, his girlfriend testified about the alleged coercion of the petitioner's statement. The trial court denied the motion to suppress, and counsel recalled the trial court "chastised" her for filing a motion to suppress such a "self-serving statement like the one

that [the petitioner] made." The trial judge commented "he thought it was curious, but if the [petitioner] had been coerced that he gave an awfully self-serving statement to have been coerced[.]"

Based on the petitioner's testimony at the hearing on the motion to suppress, trial counsel determined the petitioner should not testify at trial and advised him of such. In addition, counsel had secured a witness, Mr. Effinger, who was expected to testify the victim had a gun and who counsel believed would be "a good witness to testify . . . in [the petitioner's] place." Counsel did not think the petitioner needed to testify because "his statement supported the argument we wanted to make for self-defense and then we now had this additional witness that could testify for us[.]" Moreover, "the people that [the petitioner] was hanging out with . . . made him look bad[,]" and counsel was afraid the petitioner might make matters worse for himself if he testified. Counsel did not think the petitioner could have added anything helpful by testifying and might "have said something that would have hurt him[.]"

Trial counsel remembered talking to the petitioner about a 404(b) motion regarding testimony of the petitioner's being a gang member and having the nickname "Max Knockout" but said that suppressing such evidence "wasn't [her] main purpose." She observed that such testimony could be kept out without a 404(b) hearing, noting co-counsel vigorously and successfully objected to testimony the petitioner was a gang member.

Trial counsel recalled that the gang unit prosecuted the case, and their theory was that the barbeque was a "gang barbeque" or truce. Whereas the defense theory of the case was that the petitioner "lived in that neighborhood, had friends there, but he was rightfully living there, having a barbeque for everybody to be invited, not exclusively one gang, or the other[.]" Counsel felt any testimony related to the petitioner's gang involvement was minimal and did not think the State used the petitioner's alleged gang affiliation to paint him as a bad person.

Asked if there was any definitive testimony the petitioner was a gang member, trial counsel said, "it was more of they called him 'Max Knockout,' which was a nickname." Counsel did not remember if Ms. White or Mr. Cash affirmatively testified the petitioner was a member of the Gangster Disciples, but counsel admitted that those two witnesses referred to the petitioner as "Max Knockout" and one of them recounted hearing the petitioner say, "I am going to show you why they call me Max Knockout." However, counsel explained that "to object or bring it up draws more attention to it and I wanted to keep the attention away from that and focus[] on the fact that he was having a party in his neighborhood, where he lived."

Trial counsel spoke with a member of the gang unit to help her locate "Scooter," the security guard from the apartment complex, but was unsuccessful in her attempts to find the witness. Although she utilized the gang unit to try to find a witness, counsel did not think the petitioner's desire to call a member of the gang unit to testify on his behalf was a good idea. According to counsel, a "member of the gang unit . . . was the one prosecuting the case, as a gang case, so there is no way they are going to come in and say . . . that he is not in a gang when their prosecutors are the ones prosecuting it." Trial counsel believed that testimony from someone in the gang unit would have been detrimental to the defense.

Trial counsel explained that her theory of defense was that the petitioner acted in self-defense. She argued the petitioner was in a place he had a right to be, he did not start the argument, and he had his gun to defend himself "if something went sideways." Counsel offered the testimony of Mr. Effinger, who was a member of the Vice Lords like the victim, and who testified the victim had a "vice lord gun." The defense argued the petitioner had been "set up" and was in reasonable fear for his life, and the State's witnesses supported that argument. In sum, the defense was that the petitioner was

> a normal person, having a barbeque in . . . a gang infested environment with all these other people causing trouble[.] . . . He didn't just go get the gun to just kill somebody in another gang. He got the gun because he's trying to have a barbeque and he is surrounded by all these kind of bad people. And, he had reason to be afraid that he might end up in trouble, or somebody might come after him, because somebody was picking at him about something that he didn't really even know what it was. He didn't really know why this other guy was mad at him and they keep coming at him. So the fact that there were all these gang members around with guns, would go to his state of mind, as to why he had to have a gun in the first place, for him to be afraid in that environment when he is just trying to hang out and do his thing.

Trial counsel did not understand the petitioner's fatal variance allegation because there was not an address where the offense took place specified in the indictment. Regardless, she was not caught off guard by any of the proof that came in.

The technical record shows that on August 19, 2022, a second pro se "second amended petition" was file stamped received by the post-conviction court. In addition to his other claims, the petitioner alleged in his second "second amended petition" that trial counsel was ineffective for: (1) intentionally inflaming or prejudicing the jury and (2) vouching for the credibility of one of the State's witnesses.

On November 7, 2024, the post-conviction court issued an order denying post-conviction relief. In its order, the court considered whether trial counsel was ineffective

for: (1) failing to pursue a 404(b) hearing in an effort to exclude evidence the petitioner was a gang member; (2) failing to properly present the petitioner's self-defense theory; (3) deficiently pursuing a motion to suppress the petitioner's statement to police; (4) deficiently advising him not to testify; (5) failing to adequately challenge the enhancement factors at sentencing; and (6) failing to subpoena a member of the gang unit to testify about the petitioner's lack of gang involvement.

The post-conviction court concluded the petitioner was not entitled to relief, finding counsel's decision to not pursue a 404(b) hearing, decisions related to the motion to suppress, and advising the petitioner not to testify were strategic choices that would not be second-guessed. In addition, the court found the petitioner failed to prove prejudice as to his self-defense claim because he did not present the testimony of any proposed witnesses at the evidentiary hearing. The court further found the petitioner failed to prove he was prejudiced by counsel's decisions with regard to not having a member of the gang unit to testify, and that the petitioner waived his claim regarding enhancement factors at sentencing because he did not present any evidence on the matter.

While still represented by counsel, the petitioner filed an untimely pro se notice of appeal. The notice of appeal was signed by the petitioner on December 17, 2024, the prison mailroom signed its receipt on December 18, 2024, and it was ultimately filed in this Court on December 23, 2024.[3]

On January 13, 2025, while still represented by counsel, the petitioner filed a motion with this Court to proceed pro se on appeal. That motion was granted. Then, on February 21, 2025, the petitioner filed a motion requesting this Court appoint counsel for his appeal. On February 26, 2025, this Court entered an order recognizing that post-conviction counsel had not withdrawn and/or had not been relieved as counsel after the denial of the petition for post-conviction relief. Per this Court's order,

> This matter is before the Court upon the pro se Appellant's motion for the appointment of counsel on appeal. The appellate record has not yet been filed in this case. However, this Court has obtained copies of the trial court's November 7, 2024 order denying post-conviction relief, which indicates that the Appellant was represented by appointed counsel, [post-conviction

---

[3] As noted, the post-conviction court's order was filed on November 7, 2024. Therefore, even considering the "prison mailbox rule" and using December 18, 2024, as the date the notice of appeal was filed, the petitioner's pro se notice of appeal was eleven days late. *See* Tenn. R. App. P. 20(g) (The prison mailbox rule permits documents filed by an incarcerated pro se litigant to be deemed timely "if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.").

counsel]. However, [post-conviction counsel] has not filed any pleading or notice of appearance in this Court.

This Court notes that counsel appointed to represent an indigent defendant in the trial court is also responsible for representing the defendant throughout the proceedings, *including any appeals*, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. R. Crim. P. 37(e)(3) (emphasis added). Additionally, it has long been the rule that an appellant may not be represented by counsel and simultaneously proceed pro se. *See State v. Davis*, 141 S.W.3d 600, 615 n.12 (Tenn. 2004); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976).

This Court is of the opinion that a response from counsel would be both appropriate and beneficial. It is hereby ORDERED that [post-conviction counsel] shall have **ten (10) days** to respond in writing regarding her representation of the Appellant. If counsel was permitted by the trial court to withdraw from further representation, counsel shall include a copy of that order with her response. The Clerk is directed to forward a copy of this order to both [post-conviction counsel] and the Appellant.

In response to this Court's order, post-conviction counsel filed a response in which she stated that she "did not immediately withdraw after the trial court decision" and that while she was under the belief that the petitioner did not want her to represent him any further, she offered to "assist [the petitioner] in the process to seek new representation and get his hearing transcripts ordered for new counsel." The petitioner "did not respond to counsel regarding needing any assistance or seeking an appeal." Finally, post-conviction counsel noted that the post-conviction court "enter[ed] an order allowing counsel to withdraw on March 7, 2025."

On March 18, 2025, this Court entered an order remanding the matter to the post-conviction court, noting

[a]lthough there is no constitutional right to counsel in post-conviction proceedings, there is a statutory right that extends to the first level of appeal if the petition is not dismissed upon preliminary consideration. *See Lovin v. State*, 286 S.W.3d 275, 284 (Tenn. 2009) (citing T.C.A. §§ 40-30-107, -116). Once counsel has been appointed to represent a post-conviction petitioner, "[a]ppointed counsel shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. Sup. Ct. R. 13, § 1(e)(5); *see also* Tenn. R. Crim. P. 37(e)(3); T.C.A. §§ 40-30-115 & 40-14-

203. An appointed attorney may be permitted to withdraw only if good cause is shown. T.C.A. § 40-14-205.

Based on the trial court's March 7, 2025 order, [post-conviction counsel] has established good cause to withdraw from further representation of the [petitioner]. Accordingly, this case is hereby REMANDED to the trial court for the purpose of appointing substitute counsel to represent the [petitioner] on appeal. The trial court shall issue its order without undue delay. Substitute counsel shall file a notice of appearance in this Court within ten (10) days of the trial court's order.

After the appointment of two different attorneys, the petitioner's brief to this Court was finally filed on December 12, 2025. At no time did appellate counsel file a notice of appeal on behalf of the petitioner.

This cause was initially heard by this Court during its May 5, 2026 docket. At oral argument, both parties were questioned extensively concerning the pro se notice of appeal and whether, because the petitioner was represented by counsel at that time, the notice of appeal was a nullity and, therefore, sufficient to convey jurisdiction to this Court. At the conclusion of oral argument, this Court offered the parties the opportunity to file supplemental briefs addressing this Court's concern. Both the petitioner and the State filed supplemental briefs on May 27, 2026, and May 26, 2026, respectively.

## *Analysis*

On appeal, the petitioner argues he did not receive a full and fair hearing evidentiary hearing, necessitating a remand of the matter for a new hearing. In the alternative, the petitioner asserts he received ineffective assistance of counsel due to trial counsel's failure to seek suppression of his statement based on a *Gerstein*[4] violation, request a 404(b) hearing to exclude "highly prejudicial and unverified gang evidence," or present the testimony of a member of the gang unit to testify on his behalf. The State responds, first, that the appeal should be dismissed as untimely. Alternatively, the State asserts the petitioner is not entitled to a new evidentiary hearing or relief on any of his ineffective assistance of counsel claims.

Before we can address the petitioner's appellate claims, we must first resolve the question of this Court's jurisdiction. As noted previously, the issue of whether this Court

---

[4] When a person is arrested without a warrant, the law requires the arresting authorities to take him or her before a magistrate to seek "a timely judicial determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975).

has jurisdiction over this matter was raised during oral argument. More specifically, the Court questioned both parties as to whether the pro se notice of appeal filed while the petitioner was still represented by counsel was a legal nullity and, therefore, not sufficient to convey jurisdiction on this Court. At the conclusion of oral argument, this Court offered both sides the opportunity to provide supplemental briefing to address the Court's concern.

In his supplemental brief, the petitioner contends this Court should not treat his pro se notice as a nullity; rather, the petitioner's notice of appeal "was merely an administrative act of preservation in recognition of [the petitioner's] own duty of due diligence in pursuing and preserving his rights." Furthermore, the petitioner insists this Court should then waive the untimeliness of the pro se notice in the interest of justice. The State, however, submits that the pro se notice is a legal nullity and notes that even after this Court raised its concerns at oral argument, the petitioner, through counsel, failed to file a notice of appeal. Accordingly, the State contends this Court is "without jurisdiction over this case" and "should dismiss this appeal for lack of jurisdiction. Upon our review of the record, the parties' briefs, and the applicable law, we determine the appeal should be dismissed for lack of jurisdiction.

Our supreme court has explained that "Article I, Section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution guarantee not only a right of the accused to be represented by counsel but also a right to self-representation." *State v. Hester*, 324 S.W.3d 1, 30 (Tenn. 2010). These two rights are, however, mutually exclusive; a defendant may exercise his right to be represented by counsel or his right to represent himself, "but not both." *Id.*; *see also State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976) ("The choice is his; he represents himself or he is represented—one or the other, but not both."). And "[w]hen balancing the right of self-representation against the right to counsel at the trial stage of proceedings, the courts have assigned a constitutional primacy to the right to counsel over the right of self-representation." *Id.* Thus, our supreme court has been very clear that "a defendant may not proceed pro se while simultaneously represented by counsel." *State v. Smith*, 492 S.W.3d 224, 242 (Tenn. 2016). Therefore, a criminal defendant's pro se filings while represented by counsel are considered a legal nullity. *See, e.g., State v. Allen*, No. M2014-01475-CCA-R3-CD, 2017 WL 1736711, at *2 (Tenn. Crim. App. May 3, 2017) (defendant's timely pro se motion for a new trial filed while the defendant was represented by counsel was a nullity), *no perm. app. filed*; *Jackson v. State*, No. W2019-00731-CCA-R3-PC, 2020 WL 5792961, at *5-6 (Tenn. Crim. App. Sept. 25, 2020) (petitioner's pro se filings while represented by counsel were "a nullity" and "had no legal effect"), *no perm. app. filed*. Accordingly, when the petitioner filed his pro se notice of appeal while still represented by counsel, and no other notice was subsequently filed, the petitioner has not filed any notice of appeal in this Court.

- 10 -

Our supreme court has also long held that this Court's jurisdiction "attaches upon the filing of the notice of appeal[.]" *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). This Court, therefore, lacks jurisdiction unless an aggrieved party invokes it by filing a notice of appeal. Though the law in Tennessee has evolved over the years to permit this Court to waive the timely filing of the notice of appeal in the interest of justice, such waiver relates only to the timeliness requirement and does not allow this Court to simply assume jurisdiction where no initiating document has been filed.

From its inception in July 1979, the 30-day time for filing a notice of appeal pursuant to Rule 4, Tennessee Rule of Appellate Procedure was jurisdictional, and a party's failure to file the notice of appeal within that timeframe resulted in automatic dismissal of the appeal. *See*, *e.g.*, *State v. Williams*, 603 S.W.2d 157, 158 (Tenn. Crim. App. 1980) ("[T]his Court has previously held that Rule 4(a), [Tenn. R. App. P.], is mandatory and jurisdictional . . . this appeal must be dismissed."); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980) ("[A]ppellant's failure to timely file the notice of appeal within that framework divests this court of jurisdiction . . . . The appeal is dismissed."). In 1983, the General Assembly enacted Tennessee Code Annotated section 27-1-123, which provided, "[n]otwithstanding any other provision of law or rule of court to the contrary, in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interests of justice." 1983 Tenn. Pub. Acts, ch. 417, § 1; Tenn. Code Ann. § 27-1-123. The Court of Appeals later held that the enactment of section 27-1-123 "caused Tenn. R. App. P. 4(a) to be amended to provide that filing a notice of appeal was no longer jurisdictional in criminal cases." *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 184 n.5 (Tenn. Ct. App. 1985). Then, in *State v. Burrow*, 769 S.W.2d 510, 511 (Tenn. Crim. App. 1989), this Court held that the amended rule provided that "in all criminal cases the notice of appeal document is not jurisdictional, and the filing of such document may be waived in the interest of justice by the appellate court." (Citation and internal quotation marks omitted). This Court explained that the amended rule "tracks [Tenn. Code Ann.] § 27-1-123, which likewise provides for waiving the notice of appeal in criminal cases." *Id*. Both this Court and our supreme court applied Rule 4(a) and Tennessee Code Annotated section 27-1-123 to waive the timeliness requirement for notices of appeal. *See Crittenden v. State*, 978 S.W.2d 929, 932 (Tenn. 1998); *Burrow*, 769 S.W.2d at 511; *State v. Dodson*, 780 S.W.2d 778, 780 n.14 (Tenn. Crim. App. 1989); *State v. Morrow*, No. M2007-01716-CCA-R3-CD, 2008 WL 4949243, at *3 (Tenn. Crim. App. Nov. 19, 2008), *no perm. app. filed*; *State v. McGaha*, No. E2009-02553-CCA-R3-PC, 2011 WL 6091789, at *5 (Tenn. Crim. App. Dec. 7, 2011), *perm. app. denied* (Tenn. Apr. 11, 2012); *State v. Chappell*, No. E2010-02462-CCA-R3-CD, 2012 WL 134236, at *5 (Tenn. Crim. App. Jan. 18, 2012), *perm. app. denied* (Tenn. May 16, 2012); *Hoover v. State*, No. M2011-02413-CCA-R3-PC, 2012 WL 4841608, at *3 (Tenn. Crim. App. Oct.

10, 2012), *perm. app. denied* (Tenn. Jan. 9, 2013); *State v. Harris*, No. E2012-01919-CCA-R3-CD, 2013 WL 6229531, at *4 (Tenn. Crim. App. Dec. 2, 2013), *no perm. app. filed*.[5]

In 2017, our supreme court amended Tennessee Rules of Appellate Procedure, Rule 4(a), adding "the word 'timely' . . . to the second clause of the first sentence in subdivision (a) for the purpose of clarification." Tenn. R. App. P. 4, Advisory Comm'n Cmt. 2017. The amended rule provides that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the *timely* filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a) (emphasis added). Therefore, the amendment to Rule 4(a) clarified that this Court is not deprived of jurisdiction by the untimely filing of the notice of appeal as well as clarified that although the notice of appeal need not be timely to invoke this Court's jurisdiction, a notice of appeal remains necessary to convey jurisdiction. Indeed, the plain language of the amendment makes it clear that *only* the timely filing requirement can be waived—not the requirement of the notice of appeal itself. Rule 4(a) was never intended to dispense altogether with the requirement that one must invoke this Court's jurisdiction by filing a notice of appeal.

In his supplemental brief to this Court, the petitioner relies on the language in section 27-1-123—"notwithstanding any other provision of law or rule of court to the contrary, in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interests of justice" Tenn. Code Ann. § 27-1-123. However, the petitioner's reliance on the statute is misplaced. Our supreme court has held that "to the extent [a] statute conflicts with the thirty-day time limit prescribed by Rule 4 of the Tennessee Rules of Appellate Procedure, the rule controls." *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 455 (Tenn. 2003); *see also id.* ("It is well settled that the Tennessee Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state."); Tenn. Code Ann. § 16-3-402 ("The supreme court has the power to prescribe by general rules the forms of process, writs, pleadings and motions, and the practice and procedure in all of the courts of this state in all civil and criminal suits, actions and proceedings."); Tenn. Code Ann. § 16-3-406 (after a rule promulgated by the Supreme Court has "become effective, all laws in conflict with the rules shall be of no further force or effect"). Therefore, while section 27-1-123 and Rule 4 should be read in tandem, if the two provisions cannot be reconciled, the Rule must control. Accordingly, while this Court may waive the time for filing a notice of appeal, it lacks jurisdiction when the parties have not invoked it by filing a notice of appeal. Again, both this Court and our supreme court have long held that our jurisdiction "attaches

---

[5] In *State v. Hix*, 696 S.W.2d 22, 23 (Tenn. Crim. App. 1984), this Court arguably applied Tennessee Code Annotated section 27-1-123 so as to dispense with the notice of appeal requirement altogether. *Id.* Our Supreme Court later overruled *Hix* on that point. *State v. Messamore*, 937 S.W.2d 919 (Tenn. 1996).

upon the filing of the notice of appeal." *State v. Peak*, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991); *Pendergrass*, 937 S.W.2d at 837. [6]

Finally, as noted by the State in its supplemental brief, assumption of jurisdiction by this Court without any action on the part of the parties is incompatible with the scope of this Court's authority. Our role is not to "sit as self-directed boards of legal inquiry and research, sallying forth each day looking for wrongs to right." *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024) (Citation omitted). In short, the authority of this Court as an error correction court does not extend to the assumption of jurisdiction where neither party has invoked it. *See generally*, *id*. at *3. As succinctly argued by the State, if this Court has jurisdiction despite the parties' failure to invoke it by filing a notice of appeal, then this Court would be obligated, in all criminal cases, to consider whether the interests of justice require review. This Court's mandate as an appellate court does not extend that far.

### *Conclusion*

Having determined that the pro se notice of appeal in this matter is a legal nullity and that appellate counsel's failure to file a notice of appeal upon being appointed even after the issue of jurisdiction was raised by this Court during oral argument, we conclude that this Court is without jurisdiction to hear this matter. Furthermore, because we lack jurisdiction over this case, we cannot review and resolve the issues presented and dismiss the instant appeal for lack of jurisdiction.

---

[6] We recognize that even after the 2017 amendment to Rule 4(a), this Court has noted the potential nullity of a pro se notice of appeal while the defendant/petitioner is represented by counsel and still resolved the merits of their claims without regard to the appropriateness of the pro se filing. *State v. Huerta*, No. E2025-00063-CCA-R3-CD, 2026 WL 1450981 (Tenn. Crim. App. May 22, 2026); *State v. Swann*, No. E2025-00975-CCA-R3-CD, 2026 WL 973489, at *1 (Tenn. Crim. App. Apr. 10, 2026); *State v. Strowder*, No. E2024-00537-CCA-R3-CD, 2025 WL 659273, at *2 (Tenn. Crim. App. Feb. 26, 2025), *perm. app. denied* (June 20, 2025); *State v. Simpson*, No. W2019-00860-CCA-R3-CD, 2021 WL 120942, at *4 (Tenn. Crim. App. Jan. 13, 2021), *perm. app. denied* (Tenn. May 14, 2021); *Pillow v. State*, No. M2018-01275-CCA-R3-PC, 2020 WL 7040532, at *6 (Tenn. Crim. App. Dec. 1, 2020), *perm. app. denied* (Tenn. Mar. 17, 2021); *Hoover v. State*, No. M2011-02413-CCA-R3-PC, 2012 WL 4841608, at *3 (Tenn. Crim. App. Oct. 10, 2012), *perm. app. denied* (Tenn. Jan. 9, 2013).

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE